IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LOWELL J. ADAMS, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:13-CV-4881-D |
| VS. § | |
| § | |
| MUTUAL OF OMAHA INSURANCE § | |
| COMPANY, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this removed action alleging claims for breach of contract and wrongful termination, defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6). Because the court concludes that plaintiff has failed to plausibly allege that his employer altered his at-will employment status or that the *Sabine Pilot* exception to the at-will employment doctrine applies, the court grants defendant's motion, but it also grants plaintiff leave to replead.

I

From 1977 until 2013, plaintiff Lowell J. Adams ("Adams") was employed by defendant Mutual of Omaha Insurance Company ("Mutual").[1] Prior to his termination, Adams held the title of General Manager. Adams alleges that during his employment, Mutual

---

[1] In deciding defendant's Rule 12(b)(6) motion, the court construes plaintiff's state court petition in the light most favorable to plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiff's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

> represented that [Adams] would be employed so long as he performed his job satisfactor[il]y and [Mutual] had a company wide policy to not terminate employees so long as they were performing satisfactor[il]y. In fact, [Mutual] instructed [Adams] to not terminate the employees he supervised so long as they were performing their jobs satisfactor[il]y. Moreover, prior to terminating any employee, [Mutual's] policy was to place the employee on a performance plan.

Am. Compl. 2.

In early 2013 Adams hired a foreign national from Myanmar. Although Adams had already obtained the required documentation from this individual and received approval from the background department to hire him, Mutual asked Adams to ask the individual whether he was a U.S. citizen, what his immigration status was, what his financial status was, whether he owned other businesses, and "what kind of people does he write business on." *Id.* at 3. Adams objected to this line of questioning as improper and/or illegal discrimination based on national origin or race and "was not asked to investigate further." *Id.*

In October 2013 Mutual terminated Adams' employment, allegedly because it had "accidentally" overpaid him. Mutual also told Adams that his complaint regarding Mutual's actions relating to the employment of the individual from Myanmar "was a factor in terminating [Adams'] employment." *Id.* Adams was never placed on a performance plan. Nor was he informed that he was not performing his job satisfactorily.

After his termination, Adams sued Mutual in Texas state court for breach of contract, and Mutual removed the case based on diversity of citizenship. Adams then amended his

state-court petition to add a claim for wrongful termination.[2] Mutual moves to dismiss Adams' claims.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted). To survive Mutual's motion to dismiss under Rule 12(b)(6), Adams must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the

---

[2] Adams noted in the amended complaint that he has filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission, and that upon receipt of his right to sue letter, he intends to seek permission to amend his complaint to add a claim for age discrimination and for retaliation based on his failure to participate in what he believed to be wrongful discrimination based on national origin and/or race.

mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court turns first to Mutual's motion to dismiss Adams' breach of contract claim.

A

"[E]mployment is presumed to be at-will in Texas." *Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam). Consequently, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). "'To rebut the presumption of employment at will, an employment contract must directly limit in a meaningful and special way the employer's right to terminate the employee without cause.'" *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000) (per curiam) (quoting *Rios v. Tex. Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex. App. 1996, writ denied) (some internal quotation marks omitted). "[A]ny modification of the at-will status must be

based on express agreements rather than implied agreements," and the agreement "must be clear and explicit." *Cote v. Rivera*, 894 S.W.2d 536, 540 (Tex. App. 1995, no writ) (citations omitted); *see also Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 803 (Tex. App. 2003, no pet.) ("A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at will has the burden of proving an express agreement or written representation to that effect."); *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 703 (Tex. App. 1998, pet. denied) ("[T]o be enforceable, an agreement to modify the employment at-will relationship must be (1) expressed rather than implied, and (2) clear and specific.").

B

Adams alleges that, during his employment, Mutual "represented that [Adams] would be employed so long as he performed his job satisfactor[il]y and had a company wide policy to not terminate employees so long as they were performing satisfactor[il]y." Am. Compl. 4. Accordingly, Adams alleges that he was no longer an at-will employee, but instead had a "satisfaction contract" with Mutual. *Id.* He alleges that he performed his job in a manner that would reasonably satisfy any employer acting in good faith, and that Mutual breached its contract with him by terminating his employment without having a reasonable, good faith, or bona fide dissatisfaction or cause to terminate him.

Mutual moves to dismiss Adams' breach of contract claim, arguing that Adams' employment was at-will; that Adams has failed to allege sufficient facts to show that he entered into an express agreement with Mutual that extended his employment beyond an at-

will relationship; and that, accordingly, Adams' factual allegations are insufficient to demonstrate that Mutual breached a contractual duty owed to Adams.

Adams responds by arguing that the following oral representations and company policies support the existence of a valid satisfaction contract: (1) Mutual represented that Adams would be employed so long as he performed his job satisfactorily; (2) Mutual had a company-wide policy that it would not terminate employees so long as they were performing satisfactorily; (3) Mutual instructed Adams not to terminate the employees he supervised as long as they were performing their jobs satisfactorily; and (4) prior to terminating any employee, Mutual's policy was to place the employee on a performance plan. He posits that these allegations, taken as true, establish the clear intent by Mutual to alter the employment contracts of its employees (including Adams), such that they could not be terminated as long as they performed their jobs satisfactorily and met the requirements of their performance plan in the event Mutual determined that they were not performing their jobs satisfactorily.

C

Adams has not pleaded the existence of any written document in which Mutual converted his at-will employment status. Under Texas law, at-will employment can become contractual based on oral statements of a person with authority, but "[f]or such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Wal-Mart Stores, Inc. v. Guerra*, 2009 WL 1900411, at *4 (Tex. App. July 1, 2009, pet. denied) (mem. op.) (citing *Jones*, 92 S.W.3d at 488; *Montgomery Cnty.*, 965 S.W.2d at 502). What constitutes an

enforceable contract is a question of law for the trial court. *Gaede v. SK Invs., Inc.*, 38 S.W.3d 753, 757 (Tex. App. 2001, pet. denied). "To determine if particular oral statements manifest the required intent, courts consider both the context in which the statements were made and the language employed." *Guerra*, 2009 WL 1900411, at *4 (citing *El Expreso, Inc. v. Zendejas*, 193 S.W.3d 590, 597 (Tex. App. 2006, no pet.)). The court "must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment." *Montgomery Cnty.*, 965 S.W.2d at 503 (quoting *Hayes v. Eateries, Inc.*, 905 P.2d 778, 783 (Okla. 1995)).

> General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest [intent to bind the employer]. Neither do statements that an employee will be discharged only for "good reason" or "good cause" when there is no agreement on what those terms encompass.

*Id.* at 502.

Adams alleges that "[d]uring his employment with [Mutual], [it] represented that [Adams] would be employed so long as he performed his job satisfactor[il]y." Am. Compl. 4. Without more, this allegation is insufficient to plausibly allege that Mutual intended to be bound not to terminate Adams' employment except under clearly specified circumstances. *See Montgomery Cnty.*, 965 S.W.2d at 502. For example, it cannot be determined from the amended complaint what exactly was said by whom, and in what context. Rather, Adams seems to have alleged only the type of "general platitude[], vague assurance[] . . . and

- 7 -

indefinite promise[]" the court held was insufficient to modify an employee's at-will status in *Montgomery County*. *Id.* at 503 (quoting *Hayes*, 905 P.2d at 783); *see id.* at 502 (holding that employer's statements "that [the plaintiff] would be able to keep [her] job at the Hospital as long as [she] was doing [her] job" and "that [she] would not be fired unless there was a good reason or good cause to fire [her]" were "too indefinite to constitute an agreement limiting the [defendant's] right to discharge [the plaintiff] at will."). Without more detail, the court cannot conclude that Adams has plausibly pleaded that any oral statement was made with the required intent to bind Mutual.[3]

Adams contends that he is not arguing that his employment relationship was altered by a general statement alone, but that the combination of oral representations, together with Mutual's own policies, created a satisfaction contract between him and Mutual. He cites his allegations that Mutual "had a company wide policy to not terminate employees so long as they were performing satisfactor[il]y," and that "prior to terminating any employee, [Mutual]'s policy was to place the employee on a performance plan." Am Compl. 2. Texas courts have held, however, that "as a general rule, employee handbooks and policy manuals constitute general guidelines in the employment relationship and do not create implied contracts between the employer and employee that alter the at-will relationship." *Fort Worth*

---

[3]To the extent Adams relies on the allegation that "Defendant instructed [Adams] to not terminate the employees he supervised so long as they were performing their jobs satisfactor[il]y," Am. Compl. 4, to establish a modification of his at-will employment status, this "instruction"—directed at Adams' subordinates, not Adams—is insufficient to plausibly allege that Mutual intended to modify Adams' employment-at-will status.

- 8 -

*Transp. Auth. v. Thomas*, 303 S.W.3d 850, 859 n.17 (Tex. App. 2009, pet. denied) (citations omitted).  And even if employment policies, in limited circumstances, can alter the at-will nature of the employment and create enforceable contractual rights, *see Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 862 (5th Cir. 1999), as with oral modifications, a company policy does not modify an employee's at-will employment status unless it expressly and unequivocally evidences an intent to limit the conditions under which an employee may be terminated.  *See Seals v. City of Dallas*, 249 S.W.3d 750, 757 (Tex. App. 2008, no pet.) ("In an employment-at-will situation, written policies and personnel procedure manuals are not considered contractual absent express language clearly indicating contractual intent."); *Vida v. El Paso Emps.' Fed. Credit Union*, 885 S.W.2d 177, 181 (Tex. App. 1994, no writ) ("[A] handbook may modify the at-will relationship if it *specifically and expressly* curtails the employer's right to terminate the employee.  The manual must restrict the at-will relationship in a *meaningful and special* way." (citations omitted)); *Day & Zimmermann, Inc. v. Hatridge*, 831 S.W.2d 65, 69 (Tex. App. 1992, writ denied) (explaining that "[u]nder Texas law . . . a statement of company policy, unaccompanied by an express agreement, does not create contractual rights").

Adams does not allege the existence of any rule or policy that expressly limits Mutual's ability to terminate his employment in any meaningful way.  In fact, he admits in his brief that "at this point [he] generally alleges policies that could include policies contained in handbooks, manuals, memorandum, or policies directed orally."  P. Br. 7. Accordingly, Adams has failed to plausibly allege that his at-will employment status was

altered by an express policy or rule.[4]  The court thus grants Mutual's motion to dismiss Adams' breach of contract claim.

IV

The court next considers Adams' claim that he was wrongfully terminated because "[a] motivating factor in the termination was that [Adams] refused to participate in what he believed to be improper conduct and/or unlawful discrimination."  Am. Compl. 4.

In *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985), the Supreme Court of Texas recognized an exception to the employment at-will doctrine, allowing an employee to recover for wrongful termination when the employee's refusal to perform an illegal act is the sole basis for his termination.  *Id.*  To establish a prima facie case of wrongful termination under *Sabine Pilot*, the employee must demonstrate that (1) he was required to commit an illegal act carrying criminal penalties; (2) he refused to engage in the illegal act; (3) he was discharged; and (4) the sole reason for his discharge was his refusal to commit the illegal act.  *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (per curiam); *Sabine Pilot*, 687 S.W.2d at 735.

Adams alleges that "[a] motivating factor" in his termination was his refusal to

---

[4]Adams also argues that, because Mutual accidentally overpaid him in 2011 but allowed him to cure the overpayment, it has previously altered its employment relationship with Adams with respect to any overpayments such that its termination of Adams' employment based on the "accidental over payment" in 2013 without giving Adams the opportunity to cure constituted a breach of contract.  Even assuming the truth of these allegations, Mutual's permitting Adams to cure an accidental overpayment in 2011 does not, without more, amount to an express agreement altering Adams' at-will employment status.

participate in what he believed amounted to discrimination based on race or national origin. Am. Compl. 4 (emphasis added). He contends that he refused to ask a foreign national from Myanmar, whom he had hired, whether this individual was a U.S. citizen, what his immigration status was, what his financial status was, whether he owned other businesses, and "what kind of people does he write business on (including their ethnicities and their living conditions.[)]" *Id.* at 3. Adams alleges that he objected to this line of questioning as improper and illegal discrimination based upon nation origin or race, and that, after sending a letter to Mutual regarding this line of questioning and discussing the matter with his supervisor, Adams was not asked to investigate further. He posits that Mutual "eliminated [Adams'] position, *at least in part*, due to his opposition to discrimination." *Id.* at 4.

Adams' wrongful termination claim fails for at least two separate reasons. First, the allegedly illegal activity in which he was asked to participate—discrimination on the basis of race or national origin—carries only a civil, not a criminal penalty. Texas courts have repeatedly noted that to be actionable under *Sabine Pilot*, the illegal acts must carry criminal penalties. *Winters v. Hous. Chronicle Pub. Co.*, 795 S.W.2d 723, 724-25 (Tex. 1990); *Sabine Pilot*, 687 S.W.2d at 735; *Hancock v. Express One Int'l, Inc.*, 800 S.W.2d 634, 636 (Tex. App. 1990, writ denied). Second, Adams has specifically pleaded that his refusal to participate in the allegedly discriminatory activity was "[a] motivating factor" in his termination, not *the sole reason* for his termination. Am. Compl. 4; *see also id.* ("Defendant eliminated Plaintiff's position, *at least in part*, due to his opposition to discrimination." (emphasis added)). Adams includes these allegations in the context of his wrongful

termination claim and does allege, in connection with that claim, that he was terminated solely on the basis of his refusal to participate in illegal activity. Thus while he may be permitted under the federal rules to plead inconsistent alternative claims, he has not done so here. *See Laurence v. Atzenhoffer Chevrolet*, 281 F.Supp.2d 898, 900 (S.D. Tex. 2003) (permitting plaintiff to plead both a *Sabine Pilot* claim and an alternative theory of wrongful discharge, such as age discrimination). Adams has failed to plausibly allege a claim for wrongful termination under the *Sabine Pilot* exception to the employment at-will doctrine, and the court grants Mutual's motion to dismiss this claim.

V

Although the court is granting Mutual's motion to dismiss, it will allow Adams to replead. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (internal quotation marks and citation omitted). Because Adams has not stated that he cannot, or is unwilling to, cure the defects that the court has identified, the court grants him 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\*   \*   \*

For the reasons explained, the court grants Mutual's motion to dismiss under Rule 12(b)(6) and grants Adams leave to replead.

**SO ORDERED**.

April 9, 2014.

                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE