IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LOWELL J. ADAMS, §
§
Plaintiff, §
§ Civil Action No. 3:13-CV-4881-D
VS. §
§
MUTUAL OF OMAHA INSURANCE §
COMPANY, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this removed action by plaintiff Lowell J. Adams ("Adams") alleging claims for age discrimination, retaliation, and breach of contract against defendant Mutual of Omaha Insurance Company ("Mutual") based on Adams' termination, Mutual moves to dismiss Adams' breach of contract claim under Fed. R. Civ. P. 12(b)(6). Because the court concludes that Adams has failed to plausibly allege that Mutual altered his at-will employment status, the court grants Mutual's motion.

I

Because the background facts are set out in a prior memorandum opinion and order, *see Adams v. Mutual of Omaha Insurance Co.*, 2014 WL 1386563 (N.D. Tex. Apr. 9, 2014) (Fitzwater, C.J.) ("*Adams I*"), the court will recount only the background facts and procedural history necessary to understand the present decision.

From 1977 until his termination in 2013, Adams was employed by Mutual.[1]  Prior to

his termination, Adams held the title of General Manager.  Adams alleges that, during his

employment, Field Operations Manager Lee Bloomingdale ("Bloomingdale") told him that

> there was a written policy not to terminate an employee without
> a performance improvement plan.  Thus, field sales managers or
> supervisors had to be given specific goals to meet, and only if
> they failed to meet such goals did [Mutual] permit them to be
> terminated.  There was a three-step process: an initial warning,
> which was to be documented; a written warning; and then
> termination.

3d Am. Compl. ¶ 8.  Adams also contends that his supervisor, Jerry Abee ("Abee"), told him

"he was fine and did not need to be concerned about his job as long as he 'kept up the good

work,' including meeting the requirements for awards[.]"  *Id.* ¶ 10.

In 2013 Mutual terminated Adams' employment, allegedly because it had

inadvertently overpaid him.  Prior to his termination, Adams was never given any warning,

placed on a performance improvement plan, or given any goal that he failed to meet.  Nor

was Adams given the opportunity to cure Mutual's inadvertent overpayment.

After his termination, Adams sued Mutual for breach of contract in Texas state court,

and Mutual removed the case based on diversity of citizenship.  Adams then amended his

petition and filed an amended complaint that added a claim for wrongful termination.  Mutual

moved to dismiss the amended complaint, and the court granted the motion with leave to

---

[1] In deciding Mutual's Rule 12(b)(6) motion, the court construes Adams' third amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

replead. *Adams I*, 2014 WL 1386563, at *6. Adams then filed a second amended complaint, alleging only a claim for breach of contract, but indicating that he intended to seek permission to add claims for age discrimination and retaliation. Mutual moved to dismiss the second amended complaint under Rule 12(b)(6), but before the court addressed the motion, Adams filed a third amended complaint that includes claims for age discrimination and retaliation. Mutual moves under Rule 12(b)(6) to dismiss the breach of contract claim that Adams alleges in his third amended complaint.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's third] amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted). To survive Mutual's motion to dismiss under Rule 12(b)(6), Adams must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a

right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

A

"[E]mployment is presumed to be at-will in Texas." *Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam). Consequently, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). "'To rebut the presumption of employment at will, an employment contract must directly limit in a meaningful and special way the employer's right to terminate the employee without cause.'" *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000) (per curiam) (quoting *Rios v. Tex. Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex. App. 1996, writ denied) (some internal quotation marks omitted)).

- 4 -

Under Texas law, at-will employment may become contractual based on oral statements of a person with authority, but "[f]or such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Wal-Mart Stores, Inc. v. Guerra*, 2009 WL 1900411, at *4 (Tex. App. 2009, pet. denied) (mem. op.) (citing *Jones*, 92 S.W.3d at 488; *Montgomery Cnty.*, 965 S.W.2d at 502). What constitutes an enforceable contract is a question of law for the trial court. *Gaede v. SK Invs. Inc.*, 38 S.W.3d 753, 757 (Tex. App. 2001, pet. denied). "To determine if particular oral statements manifest the required intent, courts consider both the context in which the statements were made and the language employed." *Guerra*, 2009 WL 1900411, at *4 (citing *El Expreso, Inc. v. Zendejas*, 193 S.W.3d 590, 597 (Tex. App. 2006, no pet.)). The court "must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment." *Montgomery Cnty.*, 965 S.W.2d at 503 (quoting *Hayes v. Eateries, Inc.*, 905 P.2d 778, 783 (Okla. 1995)).

B

In *Adams I* the court held that Adams' allegation that "[d]uring his employment with [Mutual], [it] represented that [Adams] would be employed so long as he performed his job satisfactor[il]y," was insufficient to plausibly allege that Mutual intended to be bound not to terminate Adams' employment except under clearly specified circumstances. *Adams I*, 2014 WL 1386563, at *3 (alterations in original). It explained that without more detail—such as

what exactly was said by whom, and in what context—it could not conclude that any oral statement was made with the required intent to bind Mutual. *Id.*

In his third amended complaint, Adams alleges that "Abee's interaction with [Adams] regarding his job performance was always positive, telling him that he was fine and did not need to be concerned about his job as long as he 'kept up the good work,' including meeting the requirements for awards[.]" 3d Am. Compl. ¶ 10. Adams contends that Abee's statement created an enforceable satisfaction contract because it "consisted of set targets for growth and profitability," P. Br. 7, and amounted to more than "vague oral assurances because [Mutual] went beyond stating that [Adams'] work had to be satisfactory and included that [Adams] had to continue to also meet his award requirements," *id.* at 8. The court disagrees.

Although Adams has provided the court with some of the factual details that were lacking in his amended complaint, he has still failed to plead the type of oral statement that Texas courts have found is sufficient to create a binding contract. For example, in *Montgomery Cnty.* the court held that employer's statements "that [the plaintiff] would be able to keep [her] job at the Hospital as long as [she] was doing [her] job," and "that [she] would not be fired unless there was a good reason or good cause to fire [her]," were "too indefinite to constitute an agreement limiting the [defendant's] right to discharge [the plaintiff] at will." *Montgomery Cnty.*, 965 S.W.2d at 502, 503. Adams argues that Mutual "provided set criteria that [Adams] was required to meet in order to have continued employment," which included "meet[ing] the performance requirements which [Mutual] set for earning awards, as well as . . . generally perform[ing] satisfactorily." P. Br. 8. Under

- 6 -

Texas law, however, "the fact that . . . oral statements mention specific performance criteria is not enough." *Guerra*, 2009 WL 1900411, at * 6. As in *Guerra*, the oral statement in this case is "lacking on a more fundamental level: [it does] not expressly mention modifying [Adams'] at-will status; nor do[es] [it] expressly mention [Mutual] limiting its right to terminate [Adams'] employment." *Id.*

Adams relies on *El Expreso*, 193 S.W.3d 590, and *Miksch v. Exxon Corp.*, 979 S.W.2d 700 (Tex. App. 1998, pet. denied), to argue that Mutual has shown an intent to be bound if Adams meets certain standards. But *El Expreso* and *Miksch* are both distinguishable. In both cases, the employer unequivocally stated that it would not terminate the employee if the employee took a specific action that might, under normal circumstances, result in termination. *See El Expreso, Inc.*, 193 S.W.3d at 595 (holding that at-will employment contract was modified by employer's reassuring employee that he would not be fired for complying with safety regulations because comment "was based on a clear set of standards—that [employee] would not be terminated for attempting to comply with federal and state safety laws" and did "not contain ambiguous terminology or require speculation as to the parameters of the parties' purported agreement") (citation omitted); *Miksch*, 979 S.W.2d at 705 (holding that there was a fact question whether employer modified employee's at-will employment status where employee "specifically asked [employer] whether her husband's plan to lease and operate [a competing Chevron station] would threaten her position with Exxon . . . [and] [employer's] response [was] specific and definite, and when viewed in its proper context, communicate[d] the clear message that Miksch would not be

- 7 -

fired for what ordinarily would have violated Exxon's conflicts policy."). Here, Adams has not plausibly alleged that Abee's oral statement was made in the context of a serious inquiry about Adams' possible termination or in the context of a formal discussion about the terms of his employment. *Guerra*, 2009 WL 1900411, at *6. Nor does Adams allege, as in *Miksch* and *El Expreso*, that Abee made a promise that Mutual would not terminate Adams' employment if he took a specific and definite action. Rather, according to the third amended complaint, Abee merely told Adams, in the context of his "interaction with [Adams] regarding his job performance," that as long as he "kept up the good work" and met the requirements for awards, "he was fine." 3d Am. Compl. ¶ 10. This statement is precisely the type of "general platitude[], vague assurance[] . . . and indefinite promise[]" Texas courts have held was insufficient to modify an employee's at-will status. *Montgomery Cnty.*, 965 S.W.2d at 503 (quoting *Hayes*, 905 P.2d at 783).

C

1

Adams next contends that his at-will status was modified to a contractual agreement based on the representations made by Mutual regarding its employee discipline policies. He alleges that

> [h]e was told that there was a written policy not to terminate an employee without a performance improvement plan. Thus, field sales managers or supervisors had to be given specific goals to meet, and only if they failed to meet such goals did Defendant permit them to be terminated. There was a three-step process: an initial warning, which was to be documented; a written warning; and then termination.

3d Am. Compl. ¶ 8.

In support of its motion to dismiss, Mutual attaches its written "Performance Improvement Process" ("Policy"), which provides, in pertinent part:

> We are an At Will Employer. Employees of [Mutual] are At Will employees. This means that [Mutual] may terminate any employee at any time, with or without notice or cause; except for unlawful reasons. Similarly, [Mutual] recognizes an employees' right to resign at anytime for any reason
>
> The Performance Improvement Process (PIP) is used to communicate with employees that they are not meeting expectations. The stages of a PIP may include Performance Coaching, Verbal Notice, Written Notice or Involuntary Separation. The process may begin at any level with consideration given to severity, duration, or history of previous issues. In certain situations, Involuntary separation of an employee without any notice period is appropriate.

D. 5/21/14 App. Ex. A (bold font omitted). Mutual contends that the Policy is simply a guideline that provides for different discipline that *may* be administered in steps and does not, as Adams alleges, prohibit Mutual from terminating an employee without first placing him on a performance improvement plan or following a three-step process. It argues that Adams has not alleged any facts that clearly indicate that, by promulgating the Policy, Mutual intended to modify Adams' at-will status.

In response, Adams acknowledges that Mutual has relied on a copy of its Policy in its motion to dismiss, but he contends that the specific oral representations that he has pleaded regarding the Policy do not precisely match the Policy itself. He asserts that Mutual's interpretation of the Policy renders it meaningless, and that Mutual cannot unilaterally and

- 9 -

arbitrarily disregard its own Policy by inserting wording disclaiming any contractual intent to alter an at-will relationship.  He maintains that, at best, Mutual has raised a fact issue regarding the provisions of the Policy and whether the oral and written policies altered his employment status.

2

Texas courts hold that, "as a general rule, employee handbooks and policy manuals constitute general guidelines in the employment relationship and do not create implied contracts between the employer and employee that alter the at-will employment relationship." *Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850, 859 n.17 (Tex. App. Oct. 29, 2009 pet. denied) (citations omitted).  And even if employment policies can, in limited circumstances, alter the at-will nature of the employment and create enforceable contractual rights, *see Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 862 (5th Cir. 1999), as with oral modifications, a company policy does not modify an employee's at-will employment status unless it expressly and unequivocally evidences an intent to limit the conditions under which an employee may be terminated.  *See Seals v. City of Dallas*, 249 S.W.3d 750, 757 (Tex. App. 2008 no pet.) ("In an employment-at-will situation, written policies and personnel procedure manuals are not considered contractual absent express language clearly indicating contractual intent."); *Vida v. El Paso Emps.' Fed. Credit Union*, 885 S.W.2d 177, 181 (Tex. App. 1994, no writ) ("[A] handbook may modify the at-will relationship if it *specifically and expressly* curtails the employer's right to terminate the employee.  The manual must restrict the at-will relationship in a *meaningful and special*

- 10 -

way." (citations omitted)); *Day & Zimmermann, Inc. v. Hatridge*, 831 S.W.2d 65, 69 (Tex. App. 1992, writ denied) (explaining that "[u]nder Texas law . . . a statement of company policy, unaccompanied by an express agreement, does not create contractual rights").

The Policy itself, which the court is permitted to consider on Mutual's Rule 12(b)(6) motion,[2] does not alter the at-will nature of Adams' employment. It provides in unequivocal terms that Mutual "[is] an At-Will Employer," which " means that [Mutual] may terminate any employee at any time, with or without notice or cause." D. 5/21/14 App. Ex. A. Moreover, the manual does not make the PIP mandatory: it provides that the stages of a PIP "*may* include Performance Coaching, Verbal Notice, Written Notice or Involuntary Separation," and that the process "*may* begin at any level." *Id.* (emphasis added). In fact, in certain situations, the Policy expressly permits termination without any notice period. *See id.* ("In certain situations, involuntary separation of an employee without any notice period is appropriate.").

Nor does Bloomingdale's statement to Adams that "there was a written policy not to terminate an employee without a performance improvement plan," 3d Am. Compl. ¶ 8, indicate a definite intent to be bound not to terminate Adams except under clearly specified circumstances. *See Montgomery Cnty.*, 965 S.W.2d at 502. Setting aside that, as alleged, Bloomingdale inaccurately represented to Adams the content of Mutual's Policy (the Policy

---

[2]The court can consider documents attached to a motion to dismiss if they are "referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

does not, in fact, prohibit Mutual from terminating an employee without first putting him on a performance improvement plan), Bloomingdale allegedly told Adams about the "written policy not to terminate an employee without a performance improvement plan" in the context of Adams' supervisory role within the company.  Bloomingdale's telling Adams that he could not terminate clerical staff or field sales managers without following a performance improvement plan does not plausibly allege that Mutual unequivocally indicated to Adams that *he* would not be terminated without following a performance improvement plan.

Because Adams has failed to plausibly allege that his at-will employment status was altered by an oral statement or an express policy or rule,[3] the court grants Mutual's motion to dismiss Adams' breach of contract claim.

---

[3]As in *Adams I*, Adams again argues that because Mutual accidentally overpaid him in 2011 but allowed him to cure the overpayment, it has previously altered its employment relationship with him with respect to any overpayments, such that its termination of his employment based on the "accidental" "over-payment" in 2013 without giving him the opportunity to cure constitutes a breach of contract.  He adds to his argument the fact that, in 2013, Mutual did not terminate any of the other managers who also received overpayments.  The court has already held that "[e]ven assuming the truth of these allegations, Mutual's permitting Adams to cure an accidental overpayment in 2011 does not, without more, amount to an express agreement altering Adams' at-will employment status." *Adams I*, 2014 WL 1386563, at *4 n.4.  The allegations in the third amended complaint do not change this conclusion, and the court adheres to the reasoning and result of *Adams I* in this respect.

\*   \*   \*

For the foregoing reasons, the court grants Mutual's motion to dismiss Adams' breach of contract claim.

**SO ORDERED**.

March 26, 2015.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE